United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AND SEARCH WARRANT FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING AT&T CELLULAR TELEPHONE ASSIGNED CALL NUMBER 203.219.4656, INTERNATIONAL MOBILE SUBSCRIBER IDENTIFIER (IMSI) 310410386111553 | APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT<br><br>CASE NUMBER: 3-11-MJ-41<br><br>U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS FILED<br>FEB 15 2011<br>CLERK, U.S. DISTRICT COURT By _____ Deputy |

I __Paul Callen__ being duly sworn depose and say:

I am a __Special Agent with the Immigration and Customs Enforcement, Homeland Security Investigations (ICE)__ and have reason to believe that the system that provides precise location data and other location-based information should be activated and monitored on

AT&T CELLULAR TELEPHONE ASSIGNED CALL NUMBER 203.219.4656, INTERNATIONAL MOBILE SUBSCRIBER IDENTIFIER (IMSI) 310410386111553

which is

property that is being used to further the drug trafficking activities of UM#1, and others

concerning a violation of Title __21__ United States Code, Section(s) __841(a)(1), 843(b) and 846__. The facts to support a finding of Probable Cause are as follows:

(See attached affidavit of ICE Special Agent Paul Callen)

__Continued on the attached sheet and made a part hereof.__   XX  Yes   ___  No

_____
Paul Callen
Special Agent ICE

Sworn to before me, and subscribed in my presence

2-15-11
Date

at __Dallas, Texas__
City and State

RENÉE HARRIS TOLLIVER
United States Magistrate Judge
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AND SEARCH WARRANT FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING AT&T CELLULAR TELEPHONE ASSIGNED CALL NUMBER 203.219.4656, INTERNATIONAL MOBILE SUBSCRIBER IDENTIFIER (IMSI) 310410386111553 | FILED UNDER SEAL |

### AFFIDAVIT

I, Paul M. Callen, a Special Agent with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and states:

A. Introduction

1. I am a federal law enforcement officer within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent since May 2007. I am currently assigned to the HSI SAC Dallas office. I currently investigate narcotic matters, among other violations of federal law. I have experience in and have utilized various investigative methods including, but not limited to: electronic and visual surveillance, general questioning of witnesses and subjects, reviews of recorded conversations, the use of search warrants, confidential human sources, and undercover employees. Through my training, education, and experience, I have become familiar with the language used and the manner in which narcotic trafficking offenders operate their distribution networks and transactions.

Affidavit for Search Warrant - Page 1 of 5

2. I submit this affidavit in support of an application for an order pursuant to Fed.R.Crim.P. 41, 18 U.S.C. § 2703(c)(1)(A), and the "All Writs Act," 28 U.S.C. § 1651(a) directing AT&T to assist ICE agents by providing all information, facilities, and technical assistance needed to ascertain the physical location of the cellular telephone assigned call number 203.219.4656, International Mobile Subscriber Identifier (IMSI) number 310410386111553, subscribed to Prepaid Customer, 17330 Preston Rd, Dallas, Texas, 75252, but used by an unknown male (hereafter referred to as the "**Target Cell Phone**"); including but not limited to data indicating the specific latitude and longitude (GPS), geolocation/enhanced 911 Phase II information, or signal timing/triangulation data (or other precise location information) for the **Target Cell Phone** (the "Requested Information"),[1] for a period of 7 days.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other ICE Special Agents, Intelligence Analysts, and other law enforcement officers; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another ICE Special Agent, law enforcement officer,

---

[1] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Cell Phone at the start and end of any call. In requesting cell site information, the Government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause. See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

Affidavit for Search Warrant - Page 2 of 5

Intelligence Analyst, or witness who had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports or records I have read and reviewed. Because this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation and facts not stated here are not relied upon in reaching the conclusion that the requested order should be issued.

4. There is probable cause to believe that the requested information will constitute or lead to evidence of offenses involving 21 U.S.C. § 841(a)(1) and 952, U.S.C. § 843(b), 21 U.S.C. § 846, 21 U.S.C. §§ 952, 960, and 963, and 18 U.S.C. §§ 1956 and 1957 (the "Target Offenses"), as well as the identification of individuals who are engaged in the commission of these offenses.

5. For reasons set out in this affidavit, there is probable cause to believe that the Target Offenses have been committed, are being committed, and will continue to be committed by an unknown male (hereinafter referred to as UM#1), and others unknown. Further, there is probable cause to believe that UM#1 is utilizing the **Target Cell Phone** in furtherance of his efforts to commit the Target Offenses.

B. <u>Investigation to Date</u>

6. On or about October 21, 2010, a subject known as Alejandro Jaramillo was introduced to an ICE Undercover Agent (UCA). The UCA consensually recorded a conversation with Jaramillo in which Jaramillo told the UCA that there was 1,000 pounds of "merchandise" (marijuana) stored in a warehouse in Tucson, Arizona. In the call, Jaramillo solicited the UCA's assistance to transport the "merchandise" from Tucson,

Arizona, to Atlanta, Georgia. Jaramillo asked the UCA to provide a tractor-trailer. Jaramillo also told the UCA that "papeles" (money) needed to be picked up in Atlanta and delivered to the El Paso, Texas area. Jaramillo agreed to pay the UCA $60,000.00 for his participation in this drug trafficking venture. Agents note that drug traffickers routinely communicate in code. The UCA advised agents that, in the context of this conversation, Jaramillo referred to marijuana as "merchandise" and drug proceeds as "papeles." Jaramillo later contacted the UCA and told the UCA that his new Boost phone number was 915.727.2039. The UCA separately received a text message from Jaramillo advising the UCA that 128*845*869 was the UFMI, push-to-talk number, associated with 915.727.2039. From October through December 2010, the UCA consensually recorded conversations with Jaramillo discussing the transportation of "merchandise" (marijuana).

7. On or about January 18, 2011, Jaramillo met with the UCA and solicited the UCA's assistance to transport "parts" (cocaine) from Dallas, Texas, to New York, New York. Jaramillo asked the UCA to provide a tractor-trailer to transport the "parts" (approximately 30 pounds of cocaine). Jaramillo told the UCA that the UCA's truck driver would pick up the "parts" in Dallas, Texas, on or about January 24, 2011, and transport the "parts" to an unknown location in New York, New York. Jaramillo also provided the **Target Cell Phone** to the UCA, and instructed the UCA to contact the **Target Cell Phone** when the UCA's tractor-trailer was ready to pick up the "parts" in Dallas, Texas.

8. On January 23, 2011, an unidentified Spanish-speaking individual calling from **Target Cell Phone** (UM#1) contacted the UCA. UM#1 attempted to arrange the

Affidavit for Search Warrant - Page 4 of 5

delivery of the "parts" (cocaine) to the UCA in Dallas, Texas, a day earlier than Jaramillo and the UCA had negotiated. The UCA told UM#1 that the UCA's tractor-trailer had not arrived in Dallas, Texas, at the time of the call. The UCA advised agents that, in the context of this conversation, Jaramillo and UM#1 referred to cocaine as "parts".

9. On January 24, 2011, at approximately 11:00 a.m., the UCA contacted UM#1 to arrange for the delivery of the "parts" at a Valero Gas Station in Lewisville, Texas, near Interstate 35. UM#1 instructed the UCA to meet at a restaurant instead. The UCA advised UM#1 to meet at a McDonald's restaurant in Lewisville, Texas, near Interstate 35. UM#1 agreed to meet at the McDonald's, and bring the "parts" once he got the "keys to the warehouse" to pick up the "parts." The UCA advised agents that, in context of this conversation, UM#1 referred to "keys to the warehouse" as the location of the cocaine. UM#1 advised the UCA that UM#1 was in possession of the "parts" and was en route to meet the UCA at the McDonald's in Lewisville, Texas. UM#1 then contacted the UCA again and advised the UCA that he did not want to drive all the way to Lewisville, Texas, with the "parts" in the vehicle. UM#1 advised the UCA to meet him at a Wal-mart shopping center located at the intersection of Interstate 30 and N. Cockrell Hill Road, Dallas, Texas.

10. At approximately 4:15 p.m., the UCA contacted UM#1 and advised him that the UCA was parked at a Sam's Club shopping center located at 1959 W. N.W. Hwy, Dallas, Texas. UM#1 arrived at the Sam's club shopping center accompanied by another unidentified Hispanic male (hereinafter referred to as UM#2). UM#1 and UM#2 met with the UCA at the UCA's vehicle and provided the UCA with two bags containing

several bundles wrapped in cellophane wrapping. The bundles weighed approximately 30 pounds and contained a white powdery substance that field-tested positive for cocaine. UM#1 spoke to the UCA for several minutes before he and UM#2 returned to their vehicle and drove away from the Sam's Club.

11. ICE Special Agents observed UM#1 and UM#2 in a 2002, green-Kia Sedan, bearing Texas license plate BV8L204. Record checks revealed that Texas license plate BV8L204 is registered to Claudia Eureste, 4107 Hammerly Drive, Dallas, Texas. ICE Special Agents observed UM#2 driving the Kia sedan with UM#1 in the front passenger seat. UM#1 and UM#2 traveled from the Sam's Club shopping center (at 1959 W. N.W. Hwy, Dallas, Texas) to the intersection of Ottawa and Odessa Street, Dallas, Texas. This intersection is located approximately four streets west of 4107 Hammerly Drive, Dallas, Texas, where the green-Kia sedan is registered. Agents were unable to observe an exact physical location for UM#1 and/or UM#2 because they terminated the surveillance to remain undetected and to preserve the controlled delivery operation from Dallas, Texas to New York, New York. Public databases show no record and/or indication for UM#1 residing at 4107 Hammerly Drive, Dallas, Texas.

C. <u>Attempts to Identify User and Surveillance</u>

12. Agent have made several attempts to identify UM#1, the person utilizing the **Target Cell Phone**; however, all attempts have been negative. Surveillance is problematic because the residential area that UM#1 was last observed at is at a dead-end street, on a cul-de-sac, in an established neighborhood. These factors limit the law enforcement's ability to observe UM#1 without drawing attention to themselves. Affiant

believes that repeated physical surveillance in the residential area that UM#1 was last observed in will result in surveillance units being detected by UM#1 or others associated with UM#1.

D. <u>Authorization Request</u>

13. Based upon the above, there is probable cause to believe that the Requested Information will lead to evidence regarding the criminal activities described above. The Requested Information is necessary to determine the location of the **Target Cell Phone**, used by UM#1, and to assist in identifying UM#1, and to conduct physical surveillance of UM#1 in connection with narcotics trafficking.

14. Based on the above information, and pursuant to Fed. R. Crim. P. 41 and the All Writs Act, 28 U.S.C. § 1651(a), it is requested that the Court issue a warrant and an Order authorizing ICE agents to obtain the Requested Information for a period of 30 days.

17. It is further requested that the Court direct AT&T to assist ICE agents by providing all information, facilities, and technical assistance needed to ascertain the Requested Information, and further direct AT&T, the service provider for the **Target Cell Phone**, to initiate a signal to determine the location of the **Target Cell Phone** on the service provider's network or with other such reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that

provider accords the user(s) of the **Target Cell Phone**, for a period of 30 days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the ICE.

18. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

19. It is further requested that the warrant and this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and ICE agents, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and AT&T as necessary to effectuate the Court's Order.

20. It is further requested that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30

days after the termination of the monitoring period authorized by the warrant or any extensions.

PAUL CALLEN
Special Agent
Immigration and Customs Enforcement
Dallas, Texas

Sworn to and subscribed before me this __15__ th day of __February__, 2011.

RENEE HARRIS TOLLIVER
United States Magistrate Judge